UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEVONTEE PARKER | Crim. Action No. 25-96 (JDB) |

### MEMORANDUM OPINION & ORDER

    Devontee Parker is accused of several offenses related to sex trafficking. Before the Court now are his motion to suppress evidence and motion to dismiss the indictment. In the former, Parker contends that the local police officers unlawfully seized his phones when arresting him in Arizona and searched the phones without probable cause or a warrant. In the latter, he argues that a Government witness has fabricated evidence against him, that venue is improper in the District of Columbia, and that the Government has unlawfully withheld exculpatory evidence. The Government has responded, and Parker's motions are now ripe.

    For the reasons explained below, the Court denies Parker's motions.

**I.**     **Motion to Suppress**

    **A. Background**

    Parker was arrested by the Chandler, Arizona, police department for disorderly conduct related to alleged domestic violence on March 3, 2024. Opp'n to Mot. to Suppress [ECF No. 55] at 1. At the scene, the police spoke to A.L., the alleged victim of Parker's conduct charged in the indictment in this case, who told them that Parker was forcing her to engage in prostitution. Id. The officers seized Parker's gold-colored phone and a car key incident to his arrest. Id. Later that

day, the police brought A.L. the seized key, which corresponded to a car registered in her name. Id. A.L. then opened the car and provided the police with a blue-colored phone, which she identified as her work phone, and unlocked it using her fingerprint. Id. at 1-2. On the phone, the police discovered 30-40 messages from men responding to commercial sex ads. Id. at 2. The officers then secured search warrants to extract data from both phones. Id.

Arizona subsequently prosecuted Parker for sex trafficking. As part of that case, Parker filed a motion to suppress the evidence gleaned from the phones. The court held that the phones had been lawfully seized and searched pursuant to a valid warrant. See Maricopa Cnty. Super. Ct. Op. [ECF No. 51-3]. Parker now raises those same issues here.

### B. Analysis

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Parker argues that the seizures of the car key and the phones, and subsequent searches of the phones, were unreasonable. He is wrong.

(i) Seizure of the Car Key and Gold Phone

A seizure of property occurs upon the government's "meaningful interference with an individual's possessory interests in that property." United States v. Miller, 799 F.3d 1097, 1102 (D.C. Cir. 2015) (citation modified). "[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Chimel v. California, 395 U.S. 752, 763 (1969). The Supreme Court has rejected the notion that courts should conduct a "case-by-case adjudication" of law enforcement's rationale for seizing property found on a suspect's person incident to arrest, provided the underlying arrest was supported by probable cause. United States v. Robinson, 414 U.S. 218, 235 (1973); see also Riley v. California, 573 U.S. 373, 388 (2014) (upon arresting a suspect, the government may

"seize[] and secure[] [the suspect's] cell phones to prevent destruction of evidence while seeking a warrant [to search the phone].").

The initial seizure of Parker's car key and gold phone was reasonable. Parker does not contest the legality of his underlying arrest for disorderly conduct. During that arrest, the police seized his car key and phone, which were located on his person. Accordingly, the key and phone were lawfully seized incident to arrest.

After a suspect is released, the police must have probable cause to justify continuing the seizure of property taken incident to arrest. See Asinor v. District of Columbia, 111 F.4th 1249, 1252 (D.C. Cir. 2024); Avila v. Dailey, 246 F. Supp. 3d 347, 366 (D.D.C. 2017). Probable cause to seize property exists when "the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S. 730, 742 (1983) (citation modified).

The Chandler police lawfully retained Parker's car key and gold phone after his arrest. That day, A.L. told the police that Parker had forced her and others to engage in commercial sex acts. Maricopa Cnty. Super. Ct. Op. at 2. She provided the police with details of Parker's alleged sex trafficking operation, such as how he used specific websites to facilitate commercial sex and sold explicit materials on Snapchat. Id. A.L. also told the officers about a second blue-colored phone that contained messages soliciting commercial sex, voluntarily retrieved it from the car, and unlocked it. Opp'n to Mot. to Suppress at 4-5. The blue phone, which A.L. identified as her "work phone," indeed contained many messages from men soliciting commercial sex. Id. at 1. Based on the facts available to them, the Chandler police were justified in their belief that the seized materials would be "useful as evidence of a crime." Brown, 460 U.S. at 742. The continuing seizure of Parker's car key and phone after his detention was thus reasonable.

(ii) Search of the Car and Blue Phone

The Fourth Amendment presumptively prohibits warrantless searches that violate an individual's subjective expectation of privacy that society deems reasonable. Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Individuals generally lack a reasonable expectation of privacy in information that they convey to a third-party, United States v. Miller, 425 U.S. 435, 442-43 (1976), who may consent to a search of the property provided they possess "common authority" over it. United States v. Matlock, 415 U.S. 164, 171 (1974). Common authority arises "from mutual use of the property . . . ." Id. at 171 n.7. And "[e]ven a person who does not actually use the property can authorize a search if it is reasonable for the police to believe she uses it." United States v. Peyton, 745 F.3d 546, 552 (D.C. Cir. 2014).

The police received consent to search the car and blue phone from A.L. It was reasonable for the police to believe that A.L. had common authority over those materials, rendering the searches permissible, based on several factors. A.L. had common authority over the car because it was registered to her name, she lived with the possessor of the car key, and her phone was located inside of the vehicle. As for the phone, A.L. identified it as her "work phone." Opp'n to Mot. to Suppress at 1. She also retrieved it from the car and unlocked it for the police. Id. Accordingly, the search of the car and blue phone was proper.

(iii) Data Extraction from the Blue and Gold Phones

Although a cell phone may be seized incident to arrest, the police must obtain a warrant to subsequently extract data from it. Riley, 573 U.S. at 386. A warrant must be supported by probable cause that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

4

Here, the police obtained a warrant to extract data from both the blue and gold phones. The warrant was obtained following Parker's arrest, as part of an investigation into his alleged sex trafficking operation. And that warrant was supported by probable cause. The police had substantial reason to believe that the phones contained evidence of criminal activity based on the information the police had received from A.L. and the messages that they had already seen on the blue phone. Accordingly, the data extractions of the blue and gold phones were reasonable.

## II.    Motion to Dismiss the Indictment

Parker filed a lengthy submission styled as a "motion to dismiss the indictment with prejudice for due process violation." Mot. Dismiss [ECF No. 51-1]. Much of the motion is Parker's telling of the facts underlying the charged conduct from his perspective, which he believes contradicts aspects of the Government's case or is otherwise exculpatory. Those are issues for trial. He also raises several legal grounds upon which he believes the indictment should be dismissed: failure to disclose exculpatory evidence, improper venue, and unlawful search and seizure of his phones and car key (discussed above). For the reasons below, the Court denies Parker's motion.

### A. Credibility of A.L.

In his description of the facts at issue in this case, Parker argues that A.L. is not a credible witness and that her testimony is motivated by a personal vendetta against him. Mot. Dismiss at 1-6. It is unclear whether Parker believes that this is a basis upon which to dismiss the indictment. But out of an abundance of caution, this Court will treat it as such.

An indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged." United States v. Haldeman, 559 F.2d 31, 123 (D.C. Cir. 1976) (quoting Fed. R. Crim. P. 7(c)). This is a permissive standard: the government "need do little more

than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (quotation omitted); Haldeman, 559 F.2d at 123.  And for the purposes of a motion to dismiss, all allegations in the indictment are taken as true.  Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

Parker's concerns about A.L.'s credibility and motivations do not form a legally cognizable basis for dismissing an indictment.  Those arguments concern the factual sufficiency of the Government's evidence and whether it will be able to meet its burden of proof.  They do not relate to the sufficiency of the allegations as pled in the indictment.  And indeed, the indictment is facially valid.  It alleges that Parker committed three counts related to sex trafficking, explains the charges in reasonable particularity, tracks the language of the charged statutes, and includes approximate dates and locations where the charged conduct is alleged to have taken place.  To the extent that Parker wishes to pursue this line of argument, the appropriate time is during trial—by attacking A.L.'s credibility and the evidence she proffers.  And if Parker has concerns that the Government used fabricated evidence against him at trial, he may raise that issue in a post-trial motion.  See Zambrano v. City of Joliet, 141 F.4th 828, 830 (7th Cir. 2025) ("[A] claim that fabricated evidence was later used at trial to obtain a conviction violates a defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments." (emphasis added)).

**B.  Brady**

Parker argues that the Government has failed to produce exculpatory material to him in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  "Under Brady, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  Smith v. Cain, 565 U.S. 73, 75 (2012).

Although the government is required to disclose any exculpatory material in its possession, it is not compelled to seek out and unearth evidence that is not under its control. See United States v. Bryant, 439 F.2d 642, 651 (D.C. Cir. 1971), abrogation on other grounds recognized in, United States v. McKie, 951 F.2d 399, 403 (D.C. Cir. 1991) (per curiam) ("[T]he duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question."); United States v. Flynn, 411 F. Supp. 3d 15, 32 (D.D.C. 2019) ("Brady does not extend to information that is not within the government's possession.") (citation modified); United States v. Esquenazi, 752 F.3d 912, 933 (11th Cir. 2014) ("[W]here the government does not have evidence in its possession, the prosecution cannot have suppressed it, either willfully or inadvertently.").

Parker contends that the Chandler, Arizona, police department is in possession of exculpatory material stemming from the department's investigation of him. But the charges in this case are brought by the U.S. Attorney's Office for the District of Columbia. The U.S. Attorney's Office is not privy to the materials held by a municipal police department, an arm of an altogether different government. And "[k]nowledge of information that state investigators obtain is not imputed for Brady purposes to federal investigators who conduct a separate investigation when the separate investigative teams do not collaborate extensively." United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011).

There is no indication—and Parker does not even allege—that the U.S. Attorney's Office for the District of Columbia worked hand-in-glove with the Chandler police department, as would be necessary to create an extended Brady obligation. For its part, the Government maintains that the Chandler police officers who investigated Parker are "not investigators in [the Government's]

7

case" and that the Government's case "did not begin from that arrest. Our case began in 2022 in a totally different manner." Tr. of Jan. 16, 2026, Conf. [ECF No. 43] at 45:1-3.

The only point of connection that Parker identifies between the case at hand and his prosecution in Arizona is an alleged anti-trafficking grant provided by the D.C. local government to the Chandler police department in connection with his arrest. Id. at 43-44. But even if this is true, the D.C. local government is separate and distinct from the U.S. Attorney's Office for the District of Columbia, which is an arm of the federal government. And there is no indication that the anti-trafficking grant Parker references created any collaboration between the Chandler police department and D.C. law enforcement regarding the investigation and prosecution of Parker. Accordingly, the Court rejects Parker's argument.

### C. Venue

Parker believes that venue is improper because, according to him, the alleged commercial sex acts related to this case took place outside the district's geographic limits. In his telling, he and A.L. resided and operated in Northern Virginia. Mot. to Dismiss at 21. Parker acknowledges the Government's evidence that the two of them visited the District of Columbia but contends that such location data is insufficient to suggest that any criminal activity took place in the District. Id. He also concedes that "A.L.'s ads" for commercial sex "are posted in D.C." but claims that the "specific location listed on the ads" references Northern Virginia. Id. Essentially, his argument is that too little of the charged conduct took place in the District of Columbia for venue to be proper. He is wrong.

Generally, "the government must prosecute an offense in a district where the offense was committed."[1]  Fed. R. Crim. P. 18.  The statutes Parker is charged under contain no venue provision.  In such circumstances, the "court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) (citations omitted).  For offenses that are "begun in one district and completed in another, or committed in more than one district," venue is proper in "any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  Importantly, offenses that involve transportation in interstate commerce are treated as continuing offenses and may be prosecuted in any district in which they took place.  Id.

To begin, the offenses Parker is charged with are continuing offenses under 18 U.S.C. § 3237(a).  Parker is accused of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1); transportation for the purpose of prostitution, in violation of 18 U.S.C. § 2421(a); and interstate travel and transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3)(A).  See Indictment [ECF No. 1] at 1-2.  Each statute proscribes conduct related to the transportation of a victim in interstate commerce.  For example, 18 U.S.C. §§ 1591(a)(1) and (b)(1) criminalize the "transportation" of a person knowing that force, fraud, or coercion will be employed to cause them to engage in a commercial sex act.  See Jackson v. United States, Crim. A. No. 15-6, 2019 WL 3457620, at *3 (N.D. Ind. July 29, 2019) ("18 U.S.C. § 1591(a) [is a] continuing offense[] . . . .").  Likewise, 18 U.S.C. § 2421(a) criminalizes "knowingly transport[ing]" a victim to engage in prostitution.  See id. (concluding that a similarly

---

[1] In his brief, Parker references the D.C. local venue rules and cites cases from D.C. Superior Court.  But those rules do not apply in the United States District Court for the District of Columbia.

9

worded offense, 18 U.S.C. § 2423(a), was a continuing offense). And 18 U.S.C. § 1952(a)(3)(A) similarly proscribes "travel[] in interstate or foreign commerce" for the purpose of promoting a prostitution enterprise. In sum, the statutes Parker is accused of violating all involve transportation in interstate commerce, so they are continuing offenses.

Because the Government has charged Parker with continuing offenses, venue is proper in any district in which the charged conduct transpired. 18 U.S.C. § 3237(a). And recall that, in a motion to dismiss an indictment, all allegations in the indictment must be taken as true. Boyce Motor Lines, 342 U.S. at 343 n.16. The indictment alleges that Parker recruited, enticed, harbored, transported, provided, and maintained A.L. in the District of Columbia, knowing and in reckless disregard of the fact that force, fraud, and coercion would be used to cause A.L. to engage in a commercial sex act (Count 1); that he transported A.L. in the District of Columbia with the intent that she engage in prostitution (Count 2); and that he used instrumentalities of interstate commerce, including cell phones and the internet, to promote and manage prostitution offenses in violation of the laws of the District of Columbia and the United States (Count 3). See Indictment at 1-2. Those allegations clearly charge Parker with engaging in some or all of the proscribed conduct in the District of Columbia. At the motion to dismiss stage, that is enough. If Parker wishes to argue that venue is improper by challenging the Government's factual assertions, he may do so at trial. United States v. Jones, 786 F. App'x 907, 909 (11th Cir. 2019) ("Whether venue was proper is a question of fact that must be left to the jury to decide.").

* * *

Upon consideration of [52] defendant's motion to dismiss the indictment, [58] motion to suppress, and the entire record herein, it is hereby ORDERED that the motions are DENIED.

                                                    /s/
                                      JOHN D. BATES
                              United States District Judge

Dated: February 25, 2026