UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

DEVONTEE PARKER

Crim. A. No. 25-96 (JDB)

## MEMORANDUM OPINION & ORDER

Devontee Parker, appearing pro se and with the assistance of stand-by counsel, asks this Court to review Magistrate Judge Faruqui's November 24, 2025, decision to detain him pretrial, arguing that Judge Faruqui wrongly determined he posed a danger to the community. Parker also argues that he should be released under 18 U.S.C. § 3142(i), which allows for the "temporary release" of someone detained before trial when release is "necessary for preparation of the person's defense." Having considered Parker's arguments, the Court concludes that the presumption of detention, as well as each of the factors under the Bail Reform Act, all counsel in favor of pretrial detention. The Court also holds that release is not "necessary" for Parker to prepare his defense. Thus, the motion for pretrial release is denied.

## ANALYSIS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). The Bail Reform Act explains when that exception may be invoked, providing that defendants must be detained before trial when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" United States v. Vasquez-Benitez, 919 F.3d 546, 550 (D.C. Cir. 2019). The government must prove dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. United States v. Simpkins, 826 F.2d 94, 96 (D.C. Cir. 1987). In making this determination, courts must consider (1) the nature and circumstances of the crimes charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

When a magistrate judge orders a defendant detained, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Id. § 3145(b). That statute does not specify the standard of review district courts should apply in reviewing a magistrate judge's detention order, nor has the D.C. Circuit answered the question. See id.; United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every circuit to have weighed in has held that review should be de novo. See United States v. Chrestman, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (collecting cases). This Court adopts that view.

The Bail Reform Act provides an additional mechanism for temporarily releasing a person detained before trial, "in a manner that has nothing to do with a revisiting of the initial detention determination." United States v. Lee, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). Section 3142(i) authorizes the Court to "permit the temporary release" of a defendant detained pretrial "in the custody of a United States marshal or another appropriate person" if release is "necessary for preparation of the person's defense." The defendant bears the burden of "showing that temporary release is 'necessary' under Section 3142(i)." Lee, 451 F. Supp. 3d at 5.

## I. Motion for Revocation of the Magistrate Judge's Detention Order

Parker first claims that Judge Faruqui wrongly ordered him detained because there is not clear and convincing evidence of Parker's dangerousness. The Court disagrees. Considering the record anew, the Court determines that the presumption of detention as well as the factors enumerated in the Bail Reform Act each weigh in favor of detention.

### A. Presumption of Detention

Section 3142(e)(3)(D) of the Bail Reform Act imposes a presumption of detention if the Court finds probable cause to believe the defendant has committed an offense under Chapter 77—which includes sex trafficking offenses—and the offense carries a maximum term of imprisonment of twenty years of more. An indictment charging a qualifying offense satisfies the probable cause requirement. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

The indictment against Parker charges him with violating 18 U.S.C. § 1591, sex trafficking by force, fraud, or coercion, a Chapter 77 offense which carries a maximum sentence of life imprisonment. See Indictment [ECF 1] at 1–2. Accordingly, Parker faces a presumption that "no condition or combination of conditions will reasonably assure the appearance of [Parker] as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

To rebut this presumption, a defendant must "offer some credible evidence contrary to the statutory presumption." United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985). However, it is "not the responsibility of the [defendant] to carry the Government's burden of proof or persuasion." Id. And the presumption of detention must be evaluated alongside the Bail Reform Act's general admonition that defendants be "subject to the least restrictive" set of conditions sufficient to assure public safety and the defendant's appearance. 18 U.S.C. § 3142(c)(1)(B).

At his detention hearing, Parker—who was then represented by counsel—argued that he should be released on home detention with a GPS monitor, and that his mother could serve as his third-party custodian. Detention Hr'g Tr. 6:21–24. Parker's mother, an operating room nurse, testified that she would serve as his custodian, watch over him, and was willing to alert the court if Parker violated his release conditions, even if that might result in him going to jail. Id. at 13:7–24. Judge Faruqui, concluding that Parker's mother "would do a good job" as a custodian, determined that Parker had met his burden of production and rebutted the presumption. Id. at 47:3–5, 17–18.

The Court agrees that Parker has offered "some evidence in rebuttal" of the presumption. United States v. Li, Crim. A. No. 26-14-3, 2026 WL 2211161, at *2 (D.D.C. July 31, 2026). But the Court declines to treat the presumption as a "bursting bubble not to be considered" after a defendant has produced rebuttal evidence. Id. Instead, the presumption should be afforded "some weight alongside the other Bail Reform Act factors" even if the defendant offers some rebuttal evidence. Id.

In any case, the Court has doubts about the potential efficacy of Parker's mother as a custodian. The Court has no doubt that Parker's mother would do her best as her son's custodian, nor does the Court question the sincerity of her representations at Parker's detention hearing that she would supervise Parker and report any known violations to the Court. But Parker's mother and her husband both work several days a week, meaning Parker would frequently be in his mother's apartment without supervision. See Detention Hr'g Tr. 12:14–17, 22:22–25. Parker's mother indicated she would be willing to put cameras in the house, id. at 28:22–24, but because she works as an operating room nurse, the Court is not assured that someone would be available to watch the cameras around the clock, nor that recordings would be effective tools of supervision.

See United States v. Garner, Crim. A. No. 24-533, 2025 WL 1575848, at *6 (D.D.C. Mar. 11, 2025) (noting that "cameras may merely record infractions instead of ensure compliance"). Further, Parker would only need a cell phone or laptop to engage in trafficking or attempt to contact A.L., and the Court "questions the ability of any third-party custodian to provide the round-the-clock monitoring necessary to ensure absence of small internet-accessible devices in the residence." United States v. Scott, Crim. A. No. 24-287, 2024 WL 3887394, at *6 (D.D.C. Aug. 21, 2024) (citation modified).

Accordingly, the Court considers the Bail Reform Act factors with the presumption of detention in mind.

### B. Nature and Circumstances of the Offense

The first statutory factor weighs sharply in favor of detention. The factor requires the Court to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Two of the offenses Parker is charged with, sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1), and transportation for the purpose of prostitution in violation of 18 U.S.C. § 2421(a), are crimes of violence under the Bail Reform Act. 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" as including any felony under Chapter 77 or 117); see Indictment at 1–2. Reflecting the severity of the charges, a violation of § 1591(a)(1) carries a 15-year mandatory minimum term of imprisonment. 18 U.S.C. § 1591(b)(1).

Moreover, the facts proffered by the government are grave. The government proffers that Parker met A.L. when she was 19 years old and subsequently trapped her in a life of sexual exploitation—forcing her to engage in sex work for his financial benefit—for approximately three years. See Pretrial Detention Mem. [ECF 15] at 22. Parker and A.L. met on a bus, after which

Parker invited A.L. to live with him in Texas. Id. at 14. When A.L. arrived in Texas and realized that Parker wanted her to engage in sex work, she became upset. Id. at 15. In response, Parker grabbed her by the throat, pushed her against a wall, and told her that this was "the best life." Id. The government proffers that A.L. sustained injuries from that incident including a black eye, marks on her throat, and a bruise on her shoulder. Id.

The government claims that this pattern continued for years to follow. Parker would take photos of A.L. and create advertisements of her to post on websites known to be hubs for commercial sex, respond to messages from customers on A.L.'s behalf, and arrange A.L.'s "dates" with customers, including driving her to and from them because A.L. did not have a driver's license. See id. at 16–18. According to the government, Parker set a "quota" for A.L., requiring her to earn $1500 a night for him by engaging in commercial sex work, and withholding food if she failed to do so. Id. at 16. The government says that Parker also controlled A.L. by taking the money she received from customers, insisting that she regularly use cocaine, and requiring her to ask permission to do things like make phone calls or purchase basic necessities. Id. at 11, 15–16; Gov't's Resp. to Pretrial Release Mot. ("Gov't's Resp.") [ECF 90] at 2.

At some point, Parker and A.L. began a romantic relationship, eventually having a son together. Pretrial Detention Mem. at 17. The government alleges that Parker continued to sex traffic A.L. during that time. Id. The government also proffers that Parker was often violent with A.L., repeatedly assaulting her, including while she was pregnant with their son. Id. On one occasion he beat her in the head with a tennis shoe; on another he broke her tooth.[1] Id. at 17–18.

[1] The government also proffers that Parker once strangled A.L. until she became unconscious. Pretrial Detention Mem. at 18. But Parker points out that the police report following that incident reported that there were no visible injuries on A.L.'s neck. See Pretrial Release Mot. [ECF 79] at 5. As a result, this Court does not rely on the alleged strangulation incident in reaching a determination about Parker's detention.

The government claims that Parker recruited and sex trafficked other women, forcing them too to engage in commercial sex work for his profit. See Gov't's Resp. at 9–10. Thus, the violent nature and circumstances of the very serious charged offenses weigh heavily in favor of pretrial detention.

**C. Weight of the Evidence**

At this stage in the proceedings, the Court makes no conclusions about the merits of the government's case. See United States v. Taylor, 289 F. Supp. 3d 55, 68 (D.D.C. 2018) (observing that an order addressing pretrial detention "is not the occasion to adjudicate a defendant's guilt or innocence"). Still, the Bail Reform Act instructs the Court to consider the weight of the government's evidence against Parker. 18 U.S.C. § 3142(g)(2). Having considered both the government and Parker's proffers, the Court finds there is sufficient evidence against Parker to weigh in favor of detention.

The government contends that it has both testimony and significant corroborating evidence implicating Parker. First and foremost, the government intends to rely on A.L.'s testimony about the abuse that it alleges Parker inflicted. But the government proffers that A.L.'s testimony will be corroborated by evidence including the commercial sex advertisements posted online, testimony by the other women Parker is alleged to have trafficked and other witnesses, Parker's messages, A.L.'s messages, hotel records, and financial records. Gov't's Resp. at 8–9. In its Memorandum in Support of Pretrial Detention, the government reproduces text messages in which A.L. seems to acknowledge that Parker is her pimp, messages that indicate Parker was receiving the money A.L. made from commercial sex clients, and messages where A.L. discusses Parker assaulting her. Pretrial Detention Mem. at 6–10. The government also proffers that several members of A.L.'s family can corroborate parts of her testimony. See id. at 3–4, 19. This Court

agrees with Judge Faruqui that "the strength of the evidence" is "strong and that warrants detention." Detention Hr'g Tr. at 48:8–10.

Parker insists that this factor weighs in favor of release because the government's case rests on A.L.'s testimony, and A.L. is unreliable. See Pretrial Release Mot. [ECF 79] at 4–6. Parker points to various inconsistencies in the statements A.L. has given over the years and claims that her testimony cannot be corroborated. The Court is not convinced. True, as the government concedes, there seem to be some variations in the statements A.L. has given over time. See Pretrial Detention Mem. at 15 n.18. For example, in 2024, Parker was arrested in Chandler, Arizona after police responded to a domestic disturbance between A.L. and Parker. Id. at 14. As part of the investigation, A.L. disclosed that Parker had been sex trafficking her but denied that he had been abusing her and claimed that he allowed her to keep some of the money. Pretrial Release Mot. at 5. It will ultimately be the jury's responsibility to determine whether A.L.'s testimony is credible. But based on the current record, the Court concludes that the inconsistencies Parker points out do not rebut the government's significant corroborating evidence. And other inconsistencies, such as A.L. apparently giving different statements about the timeline of the beginning of her relationship with Parker or asking Parker for cocaine on some occasions, do not undermine the core allegations A.L. has made. See Pretrial Detention Mem. at 10, 15 n.18.

Similarly, the Court is not compelled by Parker's other objections. Parker argues that there are no medical records corroborating A.L.'s allegations that she was frequently assaulted. Pretrial Release Mot. at 5. But the government contends that A.L. did not seek medical attention after any of Parker's assaults, and that other evidence, such as photographs and text messages, corroborate that A.L. did have visible injuries. See Pretrial Detention Mem. at 17 & n.19. And although photos depicting A.L. travelling with her mother suggest that Parker did not isolate A.L. from her family

during the entirety of the three-year period during which the government alleges Parker was trafficking her, see Pretrial Release Mot. at 5, the photos do not undermine the government's evidence that Parker did traffic A.L. at various times within in that period.

Finally, Parker claims that A.L. "left [him] to live with her family several times" but "always returned to [him] voluntarily." Id. at 4. The government concedes that A.L. did leave and then return to Parker several times. Pretrial Detention Mem. at 17–18. But the government proffers that on at least one occasion, A.L. returned to Parker because she and their child were homeless, and Parker assured A.L. that she would no longer have to engage in sex work if she returned. Id. at 18. Accordingly, the Court does not find—at this preliminary stage—the representations that A.L. returned to Parker voluntarily to significantly undermine her testimony.

**D. History and Characteristics**

Parker's criminal history also weighs in favor of detention because he has twice been arrested and convicted for offenses related to sex trafficking and prostitution. Cf. United States v. Mumchel, 991 F.3d 1273, 1283 (D.C. Cir. 2021) ("Whether the defendant poses a threat of dealing drugs, for instance, may depend on the defendant's past experience dealing."). In April 2024, Parker was arrested and convicted in Arizona for receiving earnings from prostitution, conduct that involved two other women. Gov't's Resp. at 9. Eight years earlier, in 2016, Parker was arrested and convicted for promoting prostitution in Texas, conduct involving a different woman. Id. Parker also has convictions for giving a false name to law enforcement and driving with a suspended license in Georgia. Id.

The government argues that this history demonstrates that the charges before this Court are not a one-time occurrence, but instead part of a "consistent years-long scheme to exploit young women by preying upon their vulnerabilities and coercing them into commercial sex acts for his

profit." Gov't's Resp. at 9. On the current record, the Court agrees. Parker's history suggests a worrying pattern of continuing to traffic women even after facing arrests and convictions.

Parker does not argue that any other aspects of his history or characteristics weigh in favor of release. In particular, Parker does not rebut the government's claim that he has no legitimate employment and has instead relied on profits earned from forcing women to engage in commercial sex work. See Pretrial Detention Mem. at 14, 25. Nor does he claim to have ties to the District of Columbia. Accordingly, this factor weighs in favor of detention.

**E. Nature and Seriousness of the Danger to the Community**

The last statutory factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). For all the reasons stated above, the Court likewise finds this factor weighs in favor of detention. The Court does not doubt the intentions of Parker's mother, who was willing to serve as Parker's third-party custodian. But neither she nor her husband can provide Parker with round-the-clock supervision, and particularly given that Parker would need only a cell phone or computer to engage in sex trafficking or attempt to contact A.L. and influence her testimony, the Court finds that Parker poses a danger to A.L. and to the community. See United States v. Andrews, Crim. A. No. 19-131, 2020 WL 3182911, at *2 (S.D.N.Y. June 15, 2020) (finding that the defendant's ability to engage in sex trafficking from a cell phone counseled against home detention); accord Detention Hr'g Tr. at 44:5–7 (noting that "to traffic someone today only requires a cell phone").

Having determined that each of the Bail Reform Act factors weighs in favor of continued detention, the Court holds that there is clear and convincing evidence establishing that there is no condition or combination of conditions that will reasonably assure the safety of the community if Parker were to be released.

## II. Section 3142(i)

Parker raises one additional ground for release: he argues that temporary pretrial release is "necessary for preparation of [his] defense." 18 U.S.C. § 3142(i); see Pretrial Release Mot. at 1, 10–11. Parker argues that his ability to consult with experts and stand-by counsel is limited by the D.C. Jail's restrictions, and the Jail has yet to provide Parker with a laptop with the application necessary to review some of the discovery. Pretrial Release Mot. at 10; Reply [ECF 95] at 4. As it has previously noted, the Court is sensitive to this argument and has ordered accommodations to facilitate Parker's preparation of his defense. See May 20, 2026 Mem. Op. & Order [ECF 78] at 6 (recommending Parker be transferred to a detention center closer to D.C.); June 18, 2026 Mem. Op. & Order [ECF 88] at 4 (ordering the D.C. Jail to provide Parker with access to legal research tools). But Parker has not carried his burden to show that release is "necessary." 18 U.S.C. § 3142(i). Indeed, the Court notes that Parker has been able to file repeated pretrial motions over the past months.

The Court does not doubt that release would make it more convenient for Parker to prepare for trial. But the inconveniences Parker points to—the limitations on his ability to meet with stand-by counsel and experts according to the jail's schedule—are common to all defendants and do not rise to the level required for release under Section 3142(i). See United States v. Dupree, 833 F. Supp. 2d 241, 248 (E.D.N.Y. 2011). And stand-by counsel has previously explained that Parker's difficulty accessing discovery is "not as pronounced" of a problem because Parker can review the discovery on laptops of stand-by counsel and the defense investigator when they visit him. Resp. to Gov't Mot. to Schedule Hr'g [ECF 86] at 4. Accordingly, the Court concludes that release is not necessary for the preparation of Parker's defense.

* * *

Upon consideration of [79] the motion for review of the order of detention and for pretrial release, and the entire record herein, it is hereby ORDERED that the motion is DENIED.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: August 13, 2026