UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DEVONTEE PARKER | Crim. A. No. 25-96 (JDB) |

MEMORANDUM OPINION & ORDER

Devontee Parker, appearing pro se and with the assistance of stand-by counsel, filed a motion in limine to exclude the government's Cellebrite Universal Forensic Extraction Device Reports—reports produced after cellphone data is extracted from phones—and any testimony based on those reports. After the parties presented argument on the motion at the August 28, 2026 pretrial conference, the Court granted Parker's request for an evidentiary hearing and permitted supplemental briefing. To accommodate scheduling that hearing, the Court continued Parker's trial by one day, from September 8, 2026, to September 9, 2026. Having now carefully considered Parker's initial motion and briefing, the government's opposition, the evidence presented at the evidentiary hearing, and the parties' supplemental briefs, the Court denies Parker's motion in part, grants it in part, and defers it in part.

The crux of Parker's argument is that the government violated its discovery obligations under Federal Rule of Criminal Procedure 16 and Brady by failing to disclose the native extraction data files that are produced when a forensic examiner extracts data from a cell phone, and instead disclosing only the human-readable reports that an examiner generates from the native extraction files. The government agrees that it has only disclosed the readable reports from the extraction of each of the phones in this case, not the underlying raw data. But the Court finds that for the

majority of the phones relevant to this case, the government did not violate its obligations under either Rule 16 or Brady, because those obligations run only to material that is actually in the government's possession, custody, or control, and the native extraction files were possessed by the state authorities in Chandler, Arizona, not the federal government. However, for the two Samsung phones, which were extracted by the FBI, the Court finds that Rule 16 obligates the government to disclose the native extraction files in their possession to Parker. The specifics of these rulings are explained below.

## BACKGROUND

### I. Cell Phone Extraction

At the evidentiary hearing, the Court heard testimony from Lonnie Dworkin (a digital forensic examiner called by Parker) and Matthew Markovich (a digital investigative analyst with the Department of Justice) about the process by which forensic examiners extract data from physical cell phones. The two witnesses largely agreed about how the process works.

First, after a phone is seized, a forensic examiner uses a program, usually GrayKey or Cellebrite, to produce the "native extraction" or the "raw data" file. Hr'g Tr. [ECF 152] at 18:15–23, 79:9–13.[1] The raw data file contains "the contents of the phone" expressed in "binary," and is not readable by a human. Id. at 19:8–9. That file typically contains the entire contents of the phone without any filters or other limitations. Id. at 83:12–21. However, the raw data or native extraction file may contain something less than the entire contents of the phone if the examiner attempts to extract data without the phone's password. Id. at 83:5–17. In that situation, the

[1] The government uses the term "raw data" and Parker uses the term "native extraction." See Gov't Supp. Br.; Parker Supp. Br. Finding that the parties are using those different terms to refer to the same thing—the human-unreadable file produced after a phone is extracted, containing all of the phone's data expressed in binary—the Court uses those two terms interchangeably.

extraction file, referred to as a "before first unlock" extraction, will contain some, but not all, of the data from the phone. See Hr'g Tr. at 83:8–11; Opp'n to Mot. to Exclude Cellebrite Reports [ECF 116] at 2.

From there, the examiner loads the raw data into a tool that allows for the data to be read and analyzed, such as Cellebrite's Physical Analyzer or Magnet Forensics' Axiom. Hr'g Tr. at 19:20–22, 20:23–25. At this step, an examiner can—but does not have to—apply filters that limit what data from the native extraction file will ultimately be displayed in the report. See id. at 19:25–20:3, 85:14–18. For example, an examiner who extracts a phone pursuant to a search warrant may apply filters that limit the data produced in the report to the time period and types of data (such as photos or messages) authorized by the warrant. Id. at 90:21–25. The examiner then generates the report, usually produced as a .pdf or a .ufdr file, which is readable by a human. Id. at 20:9–17.

## II. Production of Cell Phone Data to Parker

There are seven phones relevant to this case, each with a different history. Parker, both in these motions and in previous motions, has focused largely on "the blue phone" and "the gold phone," two iPhones that were seized from Parker and A.L. in Chandler, Arizona, on March 3, 2024, after Chandler authorities responded to a domestic violence call. See Opp'n to Mot. to Exclude Cellebrite Reports at 1–2. At the time the blue phone was seized, A.L. gave the Chandler authorities the phone's passcode and signed a consent form allowing them to search the phone. Id. at 2; Excerpts of Chandler Police Report [ECF 116-1] at 3. Although A.L. provided consent for the Chandler authorities to seize and search the blue phone, they still obtained a search warrant to extract the phone's data. Opp'n to Mot. to Exclude Cellebrite Reports at 2; see Riley v. California, 573 U.S. 373, 386 (2014). Pursuant to that search warrant, the Chandler authorities then generated three Cellebrite reports "based on the differing time frame restrictions provided in the warrant,"

saved the native extraction file "to a virtual hard disk," and returned the physical phone to storage. Excerpts of Chandler Police Report at 3.

Chandler took longer to perform a full data extraction on the gold phone. The police did not have that phone's passcode at the time it was seized, and so initially they could only perform a "before first unlock" extraction; in other words, the native extraction files produced at that time did not include all of the data actually on the phone. Opp'n to Mot. to Exclude Cellebrite Reports at 2. Based on that before first unlock extraction, the Chandler police generated three Cellebrite reports "based on the differing time frame restrictions provided in the warrant." Excerpts of Chandler Police Report at 2–3. About a month later, the Chandler authorities obtained the phone's passcode, and then performed an additional extraction, this time extracting all of the data from the phone. Excerpts of Chandler Police Report at 3; Opp'n to Mot. to Exclude Cellebrite Reports at 2. They then generated additional Cellebrite reports based on the full native extraction "in the same manner as before." Excerpts of Chandler Police Report at 3. Because of the limitations imposed by the search warrant, the reports generated from the extractions of both the gold phone and the blue phone contain data only from between September 2023 and March 2024 and display only specific categories of data. See Gov't Supp. Br. [ECF 153] at 1.

For both the gold phone and the blue phone, Chandler authorities turned over each of the Cellebrite reports—but not the underlying native extractions—to the federal government. Id. at 3–4. The government, in turn, disclosed the Cellebrite reports to Parker on January 16, 2026, in their fifth production of discovery. Fifth Discovery Production Letter [ECF 35-1]. Parker and the government agree that the government has never produced the native extraction data files from either the gold or the blue phone to Parker. Gov't Supp. Br. at 2; Parker Supp. Br. [ECF 154] at 1. Indeed, the federal government has never possessed those native extraction files. See Gov't Supp.

Br. at 2. The federal government also represents that it has both the gold and the blue phones in its possession. Opp'n to Mot. to Exclude Cellebrite Reports at 3.

The next three phones, also iPhones, were seized on April 30, 2024, by authorities in Chandler. Hr'g Def. Ex. 1. One of those phones allegedly belonged to Parker; the government represents that the other two phones belonged to E.P. and A.S. respectively. Id. Authorities in Chandler extracted all three phones. Id. The resulting Cellebrite reports were all produced to Parker in the government's fifth production of discovery; again, none of the native extractions were in the government's possession or produced to Parker. See Fifth Discovery Production Letter; Gov't Supp. Br. at 1. The government has in its possession the phone allegedly owned by Parker, but the authorities in Chandler returned E.P. and A.S.'s phones to them after they were extracted. Hr'g Def. Ex. 1.

The final three phones, all Samsung phones, were seized by authorities in Chandler on May 2, 2024, pursuant to a search warrant for Parker's car. Id. For the first Samsung phone, both the Chandler authorities and the federal government attempted and failed to perform an extraction. Id. But the FBI was able to extract both the second and the third Samsung phones, allegedly used by both Parker and A.L. Id. The government created Cellebrite reports from the extractions of those two Samsung phones and then produced them to Parker on June 5, 2026. Id.; Mot. to Exclude Cellebrite Reports at 3 n.2. The government represents that those reports "were not filtered by date range or category." Gov't Supp. Br. at 1. Because the FBI extracted these two phones, not the authorities in Chandler, the federal government is presumably in possession of the native extraction files. See Hr'g Def. Ex. 1.

To prepare for trial, Parker asked Dworkin to review the discovery he received from the government. See Dworkin Decl. [ECF 147-1] at ¶ 6. After doing so, Dworkin concluded that the

government had not produced any "native extraction[s]" and instead only produced "generated report[s]." Id. at ¶ 7. For its part, the government concedes that it has not produced the native extraction files to Parker, although it says that is because those files, at least for the phones extracted in Arizona, are not, and have never been, in the government's possession. See Gov't Supp. Br. at 2–4. The government represents that it made the physical cell phones in its possession available to Parker, and that Parker never asked to see them again. Gov't Supp. Br. at 7; Opp'n to Mot. to Exclude Cellebrite Reports at 3.

## ANALYSIS

Parker argues that the government's failure to turn over any of the native extraction files produced from any of the cell phones in this case violates the government's discovery obligations under Federal Rule of Criminal Procedure 16 and Brady, warrants exclusion of the Cellebrite reports under several Federal Rules of Evidence, and violates various other principles of law. The Court addresses each argument in turn.

### I. Rule 16

Parker first claims that the government's failure to produce the native extraction files violates the government's obligation to "permit the defendant to … copy or photograph … data," under Rule 16(a)(1)(E) as well as the government's obligation to "permit a defendant to inspect and to copy or photograph the results or reports of any … scientific test or experiment," under Rule 16(a)(1)(F). As for the five phones extracted in Arizona, Parker's argument fails because the government does not and has never possessed the native extraction files, and Rule 16's obligations only apply to materials in the government's possession, custody, or control. But for the two

Samsung phones extracted by the FBI, Parker's motion is granted and the government is ordered to disclose the native extraction or raw data files in their possession to Parker.[2]

Both Rule 16(a)(1)(E) and 16(a)(1)(F) expressly make the defendant's right conditional on whether the item the defendant wishes to inspect or copy "is within the government's possession, custody, or control." But for five of the seven phones (all but the two extracted Samsung phones), the federal government does not and has never possessed the native extraction files. The authorities in Chandler, not the federal government, extracted those five phones. See Hr'g Def. Ex. 1. And for each of those phones, the Chandler authorities only turned over the Cellebrite reports, not the native extraction files, to the federal government. See Gov't Supp. Br. at 3–4, 7. So the government did not violate Rule 16 in failing to turn over the native extraction files from the five phones extracted in Chandler to Parker—those files were never "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E)–(F); United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) ("[T]he United States did not violate Rule 16 when it failed to turn over evidence it neither possessed nor controlled.").[3]

Parker tries to resist this conclusion by arguing that Rule 16's obligation "runs to the entire prosecution team, not merely the federal prosecutors in this District." Parker Supp. Br. at 9. True enough. But this Court has repeatedly held that the Chandler authorities are not part of the

---

[2] The Court notes that Parker has not to date focused on these two phones or alleged that any Brady, Giglio, or other material of interest to him is in the native extraction files.

[3] Nor was the government required to extract the phones again on Parker's behalf. See United States v. Nolde, Crim. A. No. 24-23, 2026 WL 184737, at *2 (D. Neb. Jan. 24, 2026) ("Neither Rule 16 nor Brady obligate the Government to execute search warrants on the defendant's behalf."); United States v. Mills, Crim. A. No. 16-20460, 2019 WL 3423318, at *4 (E.D. Mich. July 30, 2019) (denying defendant's request for the government to create and produce "mirror images" of extracted cell phones). Parker was entitled to ask the government to provide his forensic examiner access to the physical cell phones in the government's possession so that his examiner could extract the phones again. But as discussed infra, Parker did not make any such request until August 15, 2026, in his motion to exclude the Cellebrite reports, and the Court now treats that request as having been withdrawn. See Mot. to Exclude Cellebrite Reports at 10.

prosecution team in this case. See Aug. 13, 2026 Mem. Op. & Order [ECF 105] at 2–6; March 12, 2026 Mem. Op. & Order [ECF 72] at 4; Feb. 25, 2026 Mem. Op. & Order [ECF 62] at 6–8. And there is nothing in Parker's most recent filings to alter the Court's earlier conclusion that the Chandler authorities are not "closely aligned with the federal prosecutors here" nor did they "act[] on the prosecutors' behalf, so as to trigger disclosure obligations." Aug. 13, 2026 Mem. Op. & Order at 4. As a result, the Court states again that the federal government does not have extended disclosure obligations running to the files of the authorities in Chandler.

However, the two Samsung phones were successfully extracted by the federal prosecution team such that the prosecution should have the native extraction files in their possession. See Hr'g Def. Ex. 1. The defendant has a right to inspect or copy data and results or reports of scientific tests in the government's possession, "[u]pon a defendant's request." Fed. R. Crim. P. 16(a)(1)(E)–(F); United States v. Thompson, 355 Fed. App'x 769, 772 (4th Cir. 2009) (a "request for discovery" is "a necessary predicate to the government's obligations under Rule 16(a)(1)(E)"). Having carefully reviewed the record, the Court concludes that Parker did not make such a request for the raw data from the Samsung phones until his August 15, 2026 motion to exclude the government's Cellebrite reports. See Mot. to Exclude Cellebrite Reports at 9.

In that motion, Parker asks this Court to "compel the government to produce the full system extraction/forensic image of the device." Id. The Court notes the government's concerns about the timeliness of that request. See Gov't Supp. Br. at 7–9. But the reports generated from the extraction of the Samsung phones were not disclosed to Parker until June 5, 2026, although those phones were seized more than two years earlier. Hr'g Def. Ex. 1; Gov't Supp. Br. 1. Considering those circumstances, as well as the logistical difficulties Parker has faced in reviewing the discovery the government has produced while he is detained, the Court does not find the two-

month delay between the government's production of the reports from the Samsung phones and Parker's request for the native extraction files from those phones to be unreasonable, such that his request is now untimely. Accordingly, the government is ordered to produce the native extraction files from the Samsung phones that it extracted to Parker as soon as possible, and must do so before introducing any portion of the reports generated from the extraction of the Samsung phones at trial.

Finally, the Court interprets Parker's requests for the government to turn over the phones in its possession to his forensic examiner so that the examiner can extract the phones anew, and for the Court to grant a continuance to allow for that examination, as having now been withdrawn. At the time Parker filed his initial motion to exclude the Cellebrite reports, asking this Court to "permit defense expert examination" of the phones and grant a continuance, Parker's motion to stay the trial date was also pending. Mot. to Exclude Cellebrite Reports at 9–10; see Mot. to Stay Trial [ECF 102]. But at the status conference on August 17, 2026, Parker withdrew his motion to stay trial. See August 17, 2026 Minute Entry. At that conference, the Court determined that Parker had until August 24, 2026, to file a renewed motion to continue the trial date. Id. Parker did not file any such motion. At the August 28, 2026 pretrial conference Parker reiterated that he did not want a continuance. And at the evidentiary hearing, Parker made clear that he did not want an opportunity for his forensic examiner to extract the phones. Hr'g Tr. at 95:3–4 ("I was going to say I don't want the phones."). Nor did Parker include a request for his forensic examiner to extract the phones in his supplemental brief filed after the evidentiary hearing. See Parker Supp. Br. at 28 (asking the Court to "compel production of the full native extractions," but not requesting an opportunity for his forensic examiner to extract the phones). As a result, the Court interprets Parker's request for a continuance and for the government to turn over the physical phones in its possession to conduct new extractions as having been withdrawn.

## II. Brady

For all seven of the phones, Parker's argument under Brady fails. As the Court has explained in past rulings, the government's disclosure obligations under Brady generally extend only to exculpatory material the government actually possesses. Aug. 13, 2026 Mem. Op. & Order at 3; Feb. 25, 2026 Mem. Op. & Order at 7. And as explained above, the government does not actually possess the native extraction files from any of the five phones extracted in Arizona, so it has not violated its obligations under Brady by failing to produce those files to Parker.

Parker's supplemental filing focuses on the reports produced from the extractions of the gold and blue phones, and complains that those reports only display data from a six-month period, although the indictment covers a three-year window. See Parker Supp. Br. 10. But the authorities in Chandler extracted those phones pursuant to a search warrant, which only permitted the seizure of certain types of data on the phone in the six-month period. See Gov't Supp. Br. 1. The remainder of the data on Parker's phone "thus fell outside the scope of the warrant, and the Government was not authorized to seize it, much less retain it, review it, or offer it up" to the defense to fulfill its Brady obligations. United States v. Balwani, Crim. A. No. 18-258, 2022 WL 1405404 (N.D. Cal. May 4, 2022). Parker could have made a request under Rule 16 to have his forensic examiner extract the phones anew, but as discussed, the Court treats any such request as withdrawn. In any case, Parker's request—or lack thereof—for additional extractions of the phones does not bear on his Brady claim.

For the Samsung phones, Parker's argument under Brady fails because Parker has not demonstrated that the native extraction files contain any evidence that will be "favorable to the defense." United States v. Cloud, 102 F.4th 968, 979 (9th Cir. 2024). The government represents, and Parker does not dispute, that the reports generated from the extractions of the Samsung phones

"were not filtered by date range or category." Gov't Supp. Br. at 1. And although Dworkin testified that there "could be messages or content" that "may not have been noticed" when the reports were initially produced, and that he "might" be able to find additional information if he reviewed the native extraction files, Hr'g Tr. at 36:13–17, such bare "speculation" is "not sufficient" to sustain a Brady claim. United States v. Mason, 951 F.3d 567, 573 (D.C. Cir. 2020); see United States v. Ballard, Crim. A. No. 21-1494, 2023 WL 3221434, at *2 (2d Cir. May 3, 2023) (no Brady violation where defendant offered mere speculation that the government had failed to extract data that had been deleted from a phone). The Samsung phones in question are allegedly phones Parker used. If the reports were missing photographs, messages, or other favorable evidence that Parker knows were on those phones, presumably he would be in the best position to tell the Court what was missing. He has not done so, and that failure is fatal to his Brady argument.

Parker has only pointed to one example of evidence missing from the Cellebrite reports: some family photos. See Mot. to Exclude Cellebrite Reports at 4–5. But the Court concludes that Parker's misunderstanding about those photos stems from a report that Dworkin produced. Parker has claimed that Dworkin's report, which searched the cell phone data for particular family photos and found only three, proves that the government did not complete a full extraction of the phone, because Parker knows other family photos were on the phone. Mot. to Exclude Cellebrite Reports at 4–5. But the government contends—and Dworkin now concedes—that Dworkin's report was based on a review of the partial data extraction that the Chandler authorities initially performed on the gold phone, not the full data extraction they later performed on that phone once they obtained its password. Opp'n to Mot. to Exclude Cellebrite Reports at 3–4; Dworkin Decl. at ¶¶ 15–16. According to the government, the Cellebrite reports derived from the full extraction "do[] include the 'family photos'" that Parker believed were missing. Opp'n to Mot. to Exclude Cellebrite

Reports at 6. Neither Dworkin nor Parker contests that representation, though both have the Cellebrite reports in their possession to review. See Dworkin Decl. at ¶ 17.

At the evidentiary hearing, Parker claimed that the missing family photos were merely "an example" of the kind of data that was missing from the Cellebrite reports, and that he would make additional representations about what evidence was missing in his supplemental filing. Hr'g Tr. at 93:8–13, 94:1–2. But neither Parker's supplemental filing nor any of his earlier filings contain any such representations. Without that, Parker cannot establish a Brady violation.

**III. Evidentiary Arguments**

In his initial motion, Parker raised four arguments under the Federal Rules of Evidence. The Court concludes that none of Parker's arguments justify exclusion of the Cellebrite reports, and discusses each in turn.

*First*, Parker argues that the Cellebrite reports "should be excluded under Rule 1006" because the reports are "summar[ies]" used "to prove the content of voluminous writings, recordings, or photographs." Mot. to Exclude Cellebrite Reports at 5–6. That argument fails because the Cellebrite reports are not summaries under Rule 1006. Instead, Cellebrite reports—which may contain thousands and thousands of pages of photographs, messages, and other data extracted from a phone—are best understood as original evidence, presenting the data from an extraction of a cell phone in a human readable form. See United States v. Michalik, 5 F.4th 583, 591 (5th Cir. 2021) (forensic report was not a summary or a chart within the meaning of Rule 1006); accord United States v. Gonzalez, 144 F.4th 396, 406 (2d Cir. 2025) (analyzing the authentication of a Cellebrite report under Rule 901, not Rule 1006). That the Cellebrite reports present the extracted data—which is expressed in binary form in the native extraction files—in a

form readable by humans does not make it a summary under Rule 1006. Parker does not point to any authority to the contrary.

*Second*, Parker argues that the government will be unable to authenticate the Cellebrite reports, as required by Rule 901, under Rule 902(14) which provides for self-authentication of certified data. Mot. to Exclude Cellebrite Reports at 6–7. Parker argues that the government will not be able to establish that the Cellebrite reports are "a complete and accurate representation of the device's contents at the time of seizure." Mot. to Exclude Cellebrite Reports at 7. The government responds that it does not intend to authenticate the reports pursuant to Rule 902(14), nor will it offer whole Cellebrite reports into evidence at all. Opp'n to Mot. to Exclude Cellebrite Reports at 9. Instead, the government represents that it will authenticate messages and photos through "witnesses who participated in those conversations or were present for or took those photographs." Opp'n to Mot. to Exclude Cellebrite Reports at 9; see Fed. R. Evid. 901(b)(1). That response seems adequate, but the Court will defer this portion of Parker's motion until trial, and Parker may, if necessary, reraise any authentication concerns at the time the government seeks to admit the Cellebrite reports in part or in whole.

*Third*, in one paragraph, Parker argues that Rule 403 warrants exclusion because jurors may be likely to treat the reports as the "full contents" of the phones, when in reality the reports are something less than that. Mot. to Exclude Cellebrite Reports at 7. The Court will defer this objection to trial. The government should take care not to present the Cellebrite reports as if they display the entire contents of the extracted cell phones, particularly for the reports that are limited in terms of their temporal scope and in terms of the categories of data they represent. If Parker has concerns about how the evidence is introduced at trial, he may raise an objection or request a limiting instruction at the appropriate time.

*Finally*, Parker argues that Rule 106 requires exclusion of the reports because the government has not produced the native extraction files. Mot. to Exclude Cellebrite Reports at 8. But Parker cites no authority for the proposition that courts may exclude evidence pursuant to Rule 106, the rule of completeness. See United States v. Sutton, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (Rule 106 is not a rule of exclusion). If at trial the government offers a portion of one of the Cellebrite reports, and Parker believes another portion of the report "in fairness ought to be considered at the same time," he may raise that specific concern at that time.

## IV. Additional Arguments

Parker raises several additional arguments, some for the first time in his supplemental brief. None are availing.

Parker argues that the government has suppressed Giglio evidence, namely "the extraction logs, hash values, and native image" evidence that the defense needs "to impeach the government's forensic examiner." Parker Supp. Br. at 15. But even assuming that the evidence Parker asks for can be considered "impeachment evidence," the forensic examiners who conducted the extractions are not testifying witnesses. Gov't Witness List [ECF 127]. Evidence that might impeach individuals who do not testify at trial is not material and cannot support a Giglio claim. See United States v. Libby, 432 F. Supp. 2d 26, 36 n.10 (D.D.C. 2006) (non-witness impeachment evidence is "not material" and "need not be disclosed under Giglio"); United States v. Banks, 104 F.4th 496, 510 n.4 (4th Cir. 2024) (no Giglio violation where evidence was only of "theoretical impeachment value" because witness did not testify at trial).

Next, Parker claims that the government violated Brady by disclosing exculpatory evidence too late. Parker Supp. Br. at 16. It is not clear what evidence Parker is referring to specifically. But the Court finds that the government disclosed the reports generated from the five phones seized

in Chandler in January of 2026, and that the same reports were produced to Parker and Dworkin in 2025 as part of the case against Parker in Arizona. Gov't Supp. Br. at 9. Parker also represents that the government improperly designated the reports as "sensitive," but the government does not so concede in any of their filings. See Reply ISO Mot. to Exclude Cellebrite Reports [ECF 146] at 2–3. In any case, the Court finds that the government's January 2026 disclosure of the reports from the phones extracted in Arizona (eight months before trial), and June 2026 disclosure of the reports from the two Samsung phones (three months before trial), disclosed after the government obtained passwords to those phones through "brute force," were not so delayed as to support a Brady violation.

Parker claims that the government's failure to preserve the native extractions and the physical phones themselves violates principles of due process. Parker is wrong. He challenges the government's failure to preserve the native extraction files from each of the cell phones. As already explained, the government did not fail to preserve those files—as to the phones extracted in Arizona, it never possessed the files in the first place. As to the Samsung phones the government extracted, the government presumably has the native extraction files and shall produce them to Parker as required by this order.

Parker also challenges the government's failure to "preserve the seized devices." Parker Supp. Br. at 17–18. But the government did preserve, and has in its possession, each of the phones that were extracted except for the two belonging to E.P. and A.S. See Hr'g Def. Ex. 1. And the fact that a new extraction of the physical cell phones could potentially produce different data than what was contained in the initial native extraction files is not a due process violation; instead, that instability in the data is inherent to "the nature of cell phones" and not a result of the government's conduct. Hr'g Tr. at 74:20; Opp'n to Mot. to Exclude Cellebrite Reports at 6 n.2. Nor is it a due

process violation that the authorities in Chandler returned E.P. and A.S.'s phones, and, according to Parker, that the government returned one of A.L.'s phones to her after taking screenshots from it. Parker Supp. Br. at 19. The government is not required to "search for evidence favorable to the accused," Levin v. Katzenbach, 363 F.2d 287, 291 (D.C. Cir. 1966), nor to "execute search warrants on the defendant's behalf," United States v. Nole, Crim. A. No. 24-23, 2026 WL 184737, at *2 (D. Neb. Jan. 24, 2026), and Parker provides no legal support for the proposition that the government violates due process by failing to seize and keep cell phones belonging to individuals who consent to having their phones extracted. See Parker Supp. Br. 18–19. Nor has he identified any Brady or other relevant material likely on those phones.

* * *

Upon consideration of [111] Parker's motion to exclude the government's Cellebrite UFDR reports, [154] Parker's post-hearing brief in support of that motion in limine, the government's responsive filings, the evidentiary hearing conducted on September 2, 2026, and the entire record herein, it is hereby **ORDERED** that:

- Parker's request to compel the production of the native extraction or raw data files produced from the FBI's extractions of the two Samsung phones is **GRANTED**. The government shall disclose those files to Parker as soon as possible, and must do so before introducing any portion of the reports generated from those extractions at trial; it is further **ORDERED** that
- Parker's authentication objection is **DEFERRED**. If, at trial, the government attempts to self-authenticate any of the Cellebrite reports pursuant to Rule 902(14), Parker may object to the reports' admission at that time; it is further **ORDERED** that

- In all other respects, Parker's motion is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: September 8, 2026